UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

    v.                                    CASE NO. 8:20-cr-120-WFJ-JSS

STEVEN CHUN ET AL.

UNITED STATES' SUR-REPLY IN OPPPOSITION TO
DEFENDANT CHUN'S MOTION TO DISMISS COUNT 1
OR ALTERNATIVELY, FOR A *JAMES* HEARING

The United States (or the "government") hereby submits its sur-reply to Defendant Steven Chun's reply (Dkt. 101), which Defendant filed in further support of Defendant's Motion to Dismiss the conspiracy charge in Count 1, or alternatively, for a *James* hearing (Dkt. 84). As explained herein and in the government's opposition (Dkt. 95), which the government incorporates by reference, the Court should deny the Motion and relief requested therein.

I.    Introduction

The Defendant's reply (Dkt. 101 at 2) purports to "rectify a fatal flaw" in the Government's Opposition but actually attacks a straw man. Contrary to the Defendant's assertions (*Id.* at 1), the government has never claimed that any reimbursement services performed by Insys employees were *per se* illegal kickbacks. Rather, the government has consistently maintained that the Insys Reimbursement Center ("IRC") and Area Business Liaisons ("ABLs") were an integral part of the

charged kickback conspiracy, and part of the manner and means by which the conspirators accomplished the scheme. (Dkt. 67 at 7-9).

## II. Argument

The IRC and the ABLs were integral to the operation of the conspiracy because they helped ensure the approval of Subsys prescriptions and the flow of money so that Insys could sell more Subsys and doctors like Defendant Chun could get paid, under the guise of speaker fees, for prescribing more Subsys. The IRC was staffed with several prior authorization specialists whose full-time job was to contact, and often mislead, insurers and PBMs to obtain high rates of approval for expensive Subsys prescriptions written by large prescribers like Chun. The ABLs worked with Insys sales representatives, including Tondre, in the sham speaker events and assisted the IRC with prior authorizations and opt-ins. *See* Exh. 1 (Gurrieri excerpt testimony from *United States v Gurry et al*). These Insys reimbursement support services also benefited Chun by freeing his office staff from answering insurance queries and handling other tasks associated with securing reimbursement for Subsys. *See* Dkt. 95 Exh. 1 (email from IRC manager to her staff instructing "[D]o not call [Chun's] office for information").

Insys's hiring of Chun's girlfriend, Aqsa Nawaz, as an ABL was a key part of the conspiracy, in addition to being a benefit to Chun. In the words of former Insys CEO and President Michael Babich, hiring Nawaz "was bringing significant income to their relationship" and "would put more money in her pocket as well and thus would benefit Dr. Chun." *See* Exh. 2 (Babich testimony excerpt from *Gurry* case).

Babich testified that Nawaz was hired as an ABL because he thought it would cause Chun to write more Subsys prescriptions. *Id.* As Alec Burlakoff, former Insys Vice President of Sales, similarly stated in his trial testimony, Insys hired Nawaz as an ABL because Chun requested that Insys "find a position" for her and "to say no to Dr. Chun would be suicide. . . a very poor business decision" because Chun would "sway his business in another direction" away from Subsys. *See* Exh. 3 (Burlakoff testimony excerpts from *Gurry* case). At trial, the government anticipates that such testimony will establish that Insys hired Chun's girlfriend as a bribe for Chun to write more Subsys prescriptions.

In the Defendant's motion, in his attempt to attack the strawman, the Defendant argues at length that providing reimbursement services without "independent value" is permissible under HHS-OIG guidance. (Dkt. 101 at 2-5). This argument oversimplifies and misconstrues the guidance. The OIG's Compliance Program Guidance for Pharmaceutical Manufacturers, 68 Fed. Reg. 23731, 23735 (May 5, 2003) (2003 Compliance Program Guidance) states:

> *Standing alone*, services that have no substantial independent value to the purchaser *may not* implicate the anti-kickback statute. However, if a manufacturer provides a service having no independent value (such as limited reimbursement support services in connection with its own products) in tandem with another service or program that *confers a benefit* on a referring provider . . . the arrangement *would* raise kickback concerns.

(emphasis added).

This case is not about the IRC or the ABLs standing alone. It is about a conspiracy scheme that included the use of the IRC and ABLs to facilitate the

3

payment of claims for Subsys, including by Medicare. The testimony of Babich and Burlakoff demonstrates that Insys executives thought hiring Nawaz as an ABL would help ensure that Chun continued to prescribe more and/or higher dosages of Subsys. In addition, Insys paid Chun lucrative bribes in the form of speaker fees. This multi-faceted scheme was intended to pay kickbacks to Chun to induce him to write prescriptions for Subsys which were, in turn, reimbursed by Medicare.

Defendant wrongly suggests that providing reimbursement services can never "implicate the Anti-Kickback Statute, let alone violate it." (Dkt. 101 at 3). Not so. Defendant's reliance on OIG advisory opinions is misplaced,[1] and the OIG's 2003 Guidance makes clear that the opposite is true. Namely, when reimbursement support services are coupled with other programs that benefit prescribing physicians they can, and often do, implicate the Anti-Kickback statute. *Id*. At trial, the government anticipates that it will prove to the jury that Insys intended to provide a variety of benefits to Chun to induce him to prescribe Subsys and that Chun responded by prescribing more Subsys, as Insys desired.

The simple fact that product support labeled as "reimbursement support services" *can* be permissible in no way affects or diminishes the key role that Insys's IRC and ABLs had in this case as part of the charged conspiracy to bribe Chun and to influence his Subsys prescribing. This is not a case about "basic product support" –

---

[1] Advisory opinions have "no application" to individuals or entities under than the requestors. 42 C.F.R. § 1008.53; *see also* 42 C.F.R. § 1008.55 ("An advisory opinion may not be introduced into evidence by a person or entity that was not the requestor of the advisory opinion to prove that the person or entity did not violate" the law).

4

it's a case about a kickback conspiracy including the IRC and the ABLs as part of the manner and means of Insys paying, and Chun receiving, the illegal renumerations. As the government expects to prove at trial, Insys used the IRC to ensure the prescriptions got paid and to make the conspiracy profitable. In addition, the presence of the ABLs freed Chun's office staff from having to do work that otherwise would have been their responsibility, and as employees, would have been paid for by Chun. *See United States v. Simon*, 12 F.4d 1, 20 (1st Cir. 2021), *petition for cert. filed* (U.S. Jan 13, 2022) (No. 21-994) (the appeal of the *Gurry* case) (explaining that each ABL "worked in a physician's office processing authorizations but was paid by Insys, thereby reducing the physician's overhead"). As the government expects to prove at trial, Insys used the IRC to ensure the prescriptions got paid by Medicare and other insurers and this made the conspiracy profitable.

In his motion, Defendant claims to have the "benefit" of "seeing much of the government's evidence" in *United States v Gurry et al* (Dkt. 101 at 7), but in doing so, he mischaracterizes some of that evidence and overlooks the differences between the *Gurry* case and this one. The charges in *Gurry*, while similar to this case with respect to the speaker bribes, were part of a larger racketeering conspiracy (with Insys defendants established as a racketeering enterprise), that proved several racketeering acts, including one involving mail and wire fraud in connection with insurance. *See Simon*, 12 F.4th 1, 36 (detailing insurance fraud scheme). This case in contrast does not include insurance fraud charges.

The testimony of the IRC Manager, Liz Guerreri, was critical in *Gurry* to the proof of that racketeering act, and at trial, she described fraud on the insurers, including Medicare, in connection with getting Subsys approved for payment by insurers. It was a scam against insurance companies, not a scam against physicians, as Defendant alleged (Dkt. 101 at 6). As Guerreri testified, the intent of the fraud was to "mislead insurers." *See* Dkt. 101, Ex. 1 at 2. The entire excerpt of Guerreri's testimony that Defendant provided documented lies to the insurance companies. The insurers and PBMs, not the doctors, were the audience and those defrauded. The doctors, like Chun, granted the IRC and their sales representatives and ABLs (with vested interests in earning commissions from paid Subsys prescriptions), permission to obtain authorization for Subsys, including patient information and diagnoses, as part of the conspiracy. *See Simon*, 12 F.4th 1, 36. This enabled the IRC and the ABLs to play such a key role in the conspiracy.

The Defendant quotes Babich's testimony in *Gurry* in support of the argument that the ABL program as "a perfectly reasonable and appropriate program." (Dkt. 101 at 7). Not so. Insys specifically hired Nawaz, through the company's CEO, as a bribe to Chun, *see* Exh. 2 (Babich excerpt). Although Nawaz may have been unaware of why she was hired, the government asserts that the intent of her hiring, as established by those Insys executives who hired her, was to benefit Chun and induce him to write more Subsys prescriptions.

More generally, ABLs helped facilitate the overall conspiracy and bring money to Insys and in turn to the conspirators. As IRC Manager Liz Guerreri

6

explained, the ABLs were the "go-between" between Insys sales and the IRC. *See* Exh. 1. Thus, even though a reimbursement support program may have a legitimate purpose, the use of ABLs at Insys furthered the conspiracy in several ways, including the approval of payments of Subsys by insurers, including Medicare.[2] Further, as the First Circuit concluded in *Simon*, 12 F.4d at 20, the ABLs benefited doctors by performing tasks that would otherwise fall on office staff.

WHEREFORE, Defendant's arguments for dismissal of Count One, or for a *James* hearing, should be denied.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By: */s/ Kelley C. Howard-Allen*
Kelley C. Howard-Allen
Assistant United States Attorney
Florida Bar No.: 0085464
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
E-mail: Kelley.Howard@usdoj.gov

By: */s/ Jennifer L. Peresie*
Jennifer L. Peresie
Assistant United States Attorney
United States Attorney No. 120
E-mail: Jennifer.Peresie@usdoj.gov

---

[2] Defendant cites Nawaz's *Gurry* testimony for the proposition that there was an uptick in Chun's prescribing Abstral and Lazanda *after* Ms. Nawaz became an ABL. (Dkt. 101 at 7). Although that was Nawaz's testimony, the government submits that the evidence at trial will show the opposite.

U.S. v. Chun et al.                                Case No. 8:20-cr-120-WFJ-JSS

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 25, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

>Mark P. Rankin, Esquire
>Nicole Waid, Esquire
>Roger Futerman, Esquire
>Bjorn Brunvand, Esquire

>*/s/ Kelley C. Howard-Allen*
>Kelley C. Howard-Allen
>Assistant United States Attorney
>Florida Bar No. 0085464
>400 N. Tampa St., Ste. 3200
>Tampa, FL 33602-4798
>Telephone: (813) 274-6000
>E-mail: Kelley.Howard@usdoj.gov

8