UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                              CASE NO. 8:20-cr-00120-WFJ-JSS

STEVEN CHUN

_____/

**MOTION FOR RELEASE PENDING APPEAL OR, IN THE ALTERNATIVE, UNOPPOSED MOTION TO EXTEND THE SELF-SURRENDER DATE FOR 60 DAYS**

Defendant Steven Chun, by and through undersigned counsel, pursuant to 18 U.S.C. § 3143 and Federal Rule of Criminal Procedure 46, hereby moves this Honorable Court to impose reasonable terms of the Defendant's release pending appeal in the instant case.  In the alternative, Dr. Chun would request the Court to extend his self-surrender date to allow a necessary medical procedure to be performed.  As grounds therefore, Dr. Chun states as follows:

1.   Defendant Steven Chun is a 60 year-old retired medical doctor with no criminal history.  Dr. Chun worked in the medical field from 1997 until his retirement in 2018.

2.   Dr. Chun has resided at his current home in Bradenton, Florida since 1999.  He took in his mother and father to live with him beginning in 1998.  Though his

father passed in 2011, his now 88 year-old mother continues to reside with him and rely on him, in part, for her daily needs.

3. Dr. Chun was charged by indictment in the instant case on March 12, 2020. (Doc. 1, 67.)

4. At initial appearance, on September 16, 2020, the Court imposed conditions of release for Dr. Chun. (Doc. 17.) Dr. Chun has remained on release since that time. He has had no violations, nor any problems whatsoever while on pretrial release.

5. Beginning on May 9, 2022, the case proceeded to jury trial. The jury rendered guilty verdicts on one count of Conspiracy to Solicit, Receive, Offer, and Pay Illegal Remunerations and five counts of Soliciting and Receiving Remunerations. The Court entered judgments of acquittal on two other counts.

6. On December 5, 2022, the Court imposed a sentence of 42 months imprisonment to run concurrently on all counts, to be followed by three years of supervised release. (Doc. 299.)

7. The Court has allowed Dr. Chun to self-surrender to begin serving the term of imprisonment. The United States Marshal's Office has notified Dr. Chun that he is to report to begin serving the sentence on February 1, 2023.

8. On December 16, 2022, Dr. Chun filed a timely notice of appeal. (Doc. 311.) He anticipates raising several potential issues on appeal, which are discussed in

greater detail below. The appeal will raise substantial questions of law and fact as required by 18 U.S.C. § 3143.

9. Given his life history, coupled with the nature and circumstances of this case, Dr. Chun will continue to be of no risk to flee or to pose a danger to the safety of any other person or the community if he is released pending appeal.

10. Dr. Chun's appeal is not brought for purposes of delay and will raise substantial questions of law that are likely to result in a reversal of at least one of his convictions, an order for a new trial, or a sentence that may be shorter than the expected duration of the appeal. Given the length of Dr. Chun's sentence, were he to begin serving his period of incarceration during the pendency of the appeal, he could serve a substantial portion of the period of incarceration before the direct appeal reaches a final resolution. Between 2018 and 2021, for instance, the average time from the filing of the notice of appeal to the final disposition of criminal appeals in the Eleventh Circuit was between 10.3 and 11.1 months.[1] Those statistics, moreover, include cases that would typically be disposed of in a very short time frame, such as cases in which a defendant appeals a sentence despite having waived

---

[1] *See*
https://www.uscourts.gov/sites/default/files/data_tables/jb_b4a_0930.2018.pdf;
https://www.uscourts.gov/sites/default/files/data_tables/jb_b4a_0930.2019.pdf;
https://www.uscourts.gov/sites/default/files/data_tables/jb_b4a_0930.2020.pdf;
https://www.uscourts.gov/sites/default/files/data_tables/jb_b4a_0930.2021.pdf.

the right to appeal in a plea agreement. Given that a relatively lengthy jury trial was held in the instant case and that the appeal will be raising several relatively complex and fact-intensive issues, Dr. Chun's direct appeal is likely to take much longer that than the median timeframe. *See e.g. United States v. Diaz*, 846 Fed.Appx. 846, No. 19-11909 (11th Cir. 2021) (direct appeal taken following a jury trial on allegations of conspiracy to defraud and receiving health care kickbacks; notice of appeal filed May 13, 2019, Eleventh Circuit mandate issued on April 8, 2021); *United States v. Nerey*, 877 F.3d 956, No. 16-13614 (11th Cir. 2017) (direct appeal taken following a jury trial on charges of soliciting and receiving kickbacks; notice of appeal filed June 14, 2016, Eleventh Circuit mandate issued on January 10, 2018); *United States v. Hill*, 745 Fed.Appx. 806, No. 17-13545 (11th Cir. 2018) (direct appeal taken following a jury trial in an illegal remunerations case; notice of appeal filed April 7, 2017, Eleventh Circuit mandate issued on August 30, 2018; defendant/appellant was released pending appeal); *United States v. Whiteside*, 285 F.3d 1345 (11th Cir. 2002) (referenced by the Court at sentencing; direct appeal taken following a jury trial on charges of conspiracy to defraud and making false statements in Medicare/Medicaid and CHAMPUS reimbursement cost reports; notices of appeal filed May 19 and 22, 2000, Eleventh Circuit mandate issued on June 10, 2002).

11. Should Dr. Chun's direct appeal be successful as to any of the issues he anticipates raising, his release pending appeal would be necessary to ensuring that he does not serve any unnecessary time in prison. Conversely, if the judgment and sentence are affirmed on appeal, Dr. Chun's history demonstrates that he would humbly accept his fate and report to serve the sentence of imprisonment that has been imposed in this case. In either scenario, the interests of justice would be served by his release pending appeal.

12. Aside from the factors supporting his release pending appeal under section 3143, Dr. Chun is also undergoing medical issues that necessitate a surgical procedure and recovery that could not be completed prior to the currently scheduled February 1, 2023 self-surrender date. Dr. Chun has been suffering from progressively worsening vascular problems for the past few years. His treating physician, Dr. Nicholas Dorsay, has advised that Dr. Chun undergo laser ablation of his greater saphenous vein followed by microphlebectomy of a large varicose vein. *See* Exhibit A. Dr. Dorsay has further advised that functional recovery from that procedure is generally within two to three days, but recommends avoidance of any exposure to community situations for at least two weeks thereafter to permit healing of multiple small incisions and to minimize risk of infection. *Id.* He has additionally provided that, if the vascular problems are not treated, they will lead to difficult-to-

treat skin ulcerations that would require prolonged healing of three to six months. *Id.* Dr. Chun is awaiting authorization from his insurance provider to schedule and undergo the recommended surgery. He anticipates that it will likely take several weeks for the surgery to be approved, scheduled, and performed.

13. While his history alone demonstrates that he will not be a danger nor a flight risk, Dr. Chun's medical conditions further establish that he would pose no risk whatsoever if released pending appeal. Should, however, the Court decline to grant release pending appeal, Dr. Chun would alternatively request the Court to extend the self-surrender date for up to 60 days to allow Dr. Chun to undergo and recover from the vascular procedure outlined above.

14. Undersigned counsel has consulted with opposing counsel, Assistant United States Attorney Kelley Howard-Allen, who has advised that the United States Attorney's Office objects to Dr. Chun's release pending appeal but does not object to a 60-day extension of the self-surrender date based on the letter from Dr. Chun's physician.

## **MEMORANDUM OF LAW**

18 U.S.C. § 3143(b), provides for release pending appeal, so long as a Court finds:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in--
> (i) reversal,
> (ii) an order for a new trial,
> (iii) a sentence that does not include a term of imprisonment, or
> (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b). The release statute goes on to state, "[i]f the judicial officer makes such findings, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c) of this title, except that in the circumstance described in subparagraph (B)(iv) of this paragraph, the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence." *Id.*

With respect to the "substantial question" determination, the Eleventh Circuit has defined a "substantial question" as "one of more substance than would be necessary to a finding that it was not frivolous. It is a 'close' question or one that could very well be decided the other way." *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985). The court has further held that "there are no blanket categories

for what questions do or do not constitute 'substantial' ones. Whether a question is 'substantial' must be determined on a case-by-case basis." In the wake of the Bail Reform Act of 1984, the Southern District of Florida, relying on *Giancola*, astutely reasoned:

> …in determining whether there is a substantial question, a court must keep in mind that it is not being asked to reverse its position on issues decided at trial, nor is it being asked to grant a new trial. It must decide only that a significant issue exists that merits appellate review and that the issue is critical enough to the defendant's conviction that a contrary appellate ruling would warrant a reversal.

*United States v. Hicks*, 611 F.Supp. 497 (S.D. Fla. 1985) *citing United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985); *Giancola*, 754 F.2d at 900; *United States v. Handy*, 761 F.2d 1279, 1489 (9th Cir. 1985).

### A. Dr. Chun Poses no Danger or Flight Risk

As to the first prong of the release statute, Dr. Chun has clearly established that he is not a danger, nor a flight risk. Dr. Chun, at 60 years old, has no criminal history aside from the instant case. He has devoted his life to the practice of medicine. He has deep ties to the District, having been an active, productive, and well-known member of his community for decades. Perhaps most notably, Dr. Chun lives with and cares for his elderly mother, as he has done since 1998. He, additionally, was on release throughout the course of this case and did not violate the terms of his release or otherwise have any problems while on release.

Consequently, as set forth in the body of this motion, Dr. Chun is clearly not a danger nor a flight risk.

B. <u>The Appeal will Raise Several Substantial Questions as Contemplated under Section 3143</u>

1. <u>The Sufficiency of the Evidence</u>

Turning to the second prong of the analysis, a substantial question of law that Dr. Chun will raise on appeal is the sufficiency of the evidence to support the verdict. The Government failed to present any direct evidence that Dr. Chun had knowledge of any conspiracy to receive kickbacks nor that he knowingly took any action to further any such conspiracy. In the end, the Government's case relied on inferences drawn from circumstantial evidence related to Dr. Chun's connection to co-defendant Tondre. To illustrate, Alec Burlakoff, the former Vice President of Sales at Insys, testified that he "had to take a shot" at influencing Dr. Chun to prescribe more of his product but that he knew that he "couldn't influence Dr. Chun." (Doc. 236 at 201.) Government witnesses Michael Babich and Liz Gurrieri, who were orchestrators of the scheme at issue, likewise testified that to having had little to no contact with Dr. Chun. *See* Doc. 234 at 217-18; 237 at 205. In the end, the Government's case rested on a pyramid of inferences.

With respect to the conspiracy charge, while "the essential elements of a conspiracy can be proved by inference from the actions of the parties or by the

circumstantial evidence," "mere presence or association with others in a criminal scheme is not sufficient to prove participation in a conspiracy." *United States v. Mulherin*, 710 F.2d 731, 737-738 (11th Cir. 1983) (internal citations omitted). "Since no one can be said to have agreed to a conspiracy that they do not know exists, proof of knowledge of the overall scheme is critical to a finding of conspiratorial intent." *United States v. Chandler*, 388 F.3d 796, 806 (11th Cir. 2004). Likewise, "'[n]obody is liable in conspiracy except for the fair import of the concerted purpose or agreement as he understands it.'" *Id. quoting United States v. Peoni*, 100 F.2d 401, 403 (2nd Cir. 1938). "The government, therefore, must prove beyond a reasonable doubt that the conspiracy existed, that the defendant knew about it and that he voluntarily agreed to join it." *Id. citing United States v. Hernandez*, 896 F.2d 513, 519 (11th Cir. 1990).

Similarly, with respect to the substantive illegal remunerations counts, the Eleventh Circuit has found that, "[i]n order to find that a person acted willfully in violation of § 1320a–7b, the person must have acted 'voluntarily and purposely, with the specific intent to do something the law forbids, that is with a bad purpose, either to disobey or disregard the law.'" *United States v. Sosa*, 777 F.3d 1279, 1293 (11th Cir. 2015) *quoting United States v. Vernon*, 723 F.3d 1234, 1256 (11th Cir. 2013) (quoting *United States v. Starks*, 157 F.3d 833, 838 (11th Cir. 1998)). While "the

Defendant need not have known that a specific referral arrangement violated the law," he must have still had that "specific intent to do something the law forbids." *Id.*

Based on the foregoing, to be guilty of any of the counts for which he was convicted, Dr. Chun a) must have known of the unlawful plan to pay remunerations in exchange for prescriptions and b) must have willfully joined in it. Reaching the conclusions that he had such knowledge and acted with such willfulness required a stacking of inferences stemming from Dr. Chun's attendance at the Insys sponsored dinner. While Dr. Chun certainly understands and respects the Court's ruling in denying his motions for judgments of acquittal, he also respectfully submits that the sufficiency of the evidence will be a substantial question on direct appeal given the evidence that was presented in this case. Even when viewing the evidence in a light most favorable to the Government, the sufficiency of the evidence will be a close call on which jurists of reasons could certainly disagree. The fact that the jury spent two days deliberating illustrates that the instant case was a "close call" as contemplated under *Giancola* and its progeny. For that reason, the sufficiency of the evidence will present a substantial question on direct appeal.

2. <u>The Objection to the Court's Answer to a Jury Question</u>

Second, in addition to the sufficiency of the evidence argument, Dr. Chun anticipates raising the question of error in the Court's answer to a jury question that was received just prior to the jury rendering its verdict. The jury posed the question "[w]e, the jury are requesting the exhibit number associated with a text message from defendant Tondre in 2013 in which he 'forwards' in part a direct message purportedly from defendant Chun and whose original message is not present in evidence." (Doc. 217 at 5.) The Court concluded that the text messages that the jury was referring to were Government Exhibits 212B, 213B, and 213D. Those text messages were entered into evidence but were never addressed during any point of the trial until the Government's closing argument. The Government presented no evidence whatsoever that the text messages at issue were forwarded from Dr. Chun. It nonetheless referred to those text messages in the closing argument as having been "forwarded from Dr. Chun." (Doc. 241 at 56, 140.) The Government went so far as to argue that the messages "are clearly forwarded from Chun." (Doc. 241 at 56.) It later expanded on that argument:

> Those sound like incriminating texts. And where is the original text from Dr. Chun on or about, on or around 9-18-2013? They're not there.
>
> Out of the more than 1,000 texts from 2013, we find these two texts forwarded from Chun, but you certainly see no texts from Chun in 2013, a further coverup by Dan Tondre of his communications that

directly show that this program was about bribing Dr. Chun to write more Subsys prescriptions that were paid for in part by Medicare and they were done with Dan Tondre as the payor through these bogus speaker programs.

(Doc. 241 at 56.) The record, moreover, is unclear as to which exhibits the Government was relying on in making those arguments because the Government did not state the numbers of the exhibit or exhibits to which it was referring.

Given those facts, Dr. Chun objected to the jury being instructed in any more detail other than to answer "you have to rely on your memory and the evidence that's in the jury room." (Doc. 242 at 9.) Over Dr. Chun's objection, the Court answered "Per your note: You may be referring to Exs. 212B, 213B, and 213D?? Please consider all the evidence as a whole..." (Doc. 217 at 6.)

Again, though Dr. Chun certainly understands and respects the Court's overruling of his objection to the answer to the jury question, the question of the appropriateness of the Court's answer to the jury will present a substantial question on appeal. The Court's question was tantamount to a comment on the evidence because it validated the Government's claim that the text messages had been forwarded from Dr. Chun despite the fact that the Government presented no evidence whatsoever that the text messages at issue were even forwarded text messages. The Court's answer to the jury appeared to be compelling because the

jury, after having deliberated for two days, rendered its verdicts shortly after receiving the answer.

In *Giancola*, the Eleventh Circuit, relying on the Third Circuit's opinion in *Miller*, cited as examples of substantial questions "'one which is either novel, ... has not been decided by controlling precedent, or ... is fairly doubtful.'" *Giancola*, 754 F.2d at 900 *quoting Miller*, 753 F.2d at 23. Consistent with those examples, the unique facts and circumstances of the instant issue certainly make it a novel question that has not been decided by controlling precedent. Likewise, given the substantial question of the sufficiency of the evidence, should the Eleventh Circuit fund error in the Court's answer to the jury question, that error would almost certainly necessitate a new trial. For those reasons, the issue arising from the answer to the jury question will present a second substantial question on direct appeal.

> 3. <u>The Government's Presentation of Evidence Concerning the Unrelated Cephalon Scheme in Violation of the Court's Rulings</u>

Third, Dr. Chun will raise on appeal the question of the Government's repeated admission of testimony concerning a purported "speaker program" connected to pharmaceutical company Cephalon. The Cephalon activity occurred more than 10 years prior to the instant case. The Court had instructed the Government not to present any such evidence. (Doc. 235 at 250; 244 at 16.) Despite the Court's rulings, the Government presented evidence concerning the Cephalon

activity at numerous points throughout the course of the trial. *See e.g.* Doc. 235 at 252, 255, 260; 236 at 37, 210; 240 at 5.

The Government thereafter argued in closing that Tondre had improperly influenced Dr. Chun during his time at Cephalon and that Tondre and the Insys executives thereby knew that Tondre could likewise improperly influence Dr. Chun as alleged in the instant case. (Doc. 241 at 17, 137, 141-42.) Dr. Chun went on to move for a mistrial in response to the Cephalon arguments in closing. (Doc. 241 at 147.) He likewise raised the issue in his motion for a new trial. (Doc. 244 at 15-20.)

The Cephalon issue will be a fact-intensive issue that will rely on the record of the trial as a whole. The issue will thereby be novel and unique to the instant case. Furthermore, given the close question of the sufficiency of the evidence, any error in the Government's admission and argument of the Cephalon evidence may have very well been what tipped the scales in the Government's favor. Again, while Dr. Chun respects and accepts the Court's denial of the motions for mistrial and for new trial, he nonetheless submits that the issue will present a substantial question as contemplated in section 3143(b) given the unique facts of this case.

### 4. Other Anticipated Issues to Be Raised on Direct Appeal

Counsel anticipates that other potential issues will be raised on appeal, including a) the issue of the presentation of testimony concerning medical necessity and b) the issue of the calculation of the improper benefit conferred for purposes of

the Sentencing Guidelines. While those issues will also likely meet the standard of a "substantial question" pursuant to section 3143(b), Dr. Chun relies on the substantial questions outlined above for purposes of his request for release pending appeal. Should any question remain as to the merits of the direct appeal, however, Dr. Chun would ask the Court to consider those additional issues in making the substantial question determination required under section 3143.

## CONCLUSION

Given the foregoing, Dr. Chun meets the statutory criteria for release pending appeal. He has established by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person or the community if released pending appeal. He has likewise established that his direct appeal is not taken for the purpose of delay and will raise at least three substantial questions of law and fact that will likely result in a reversal or an order for a new trial. Consequently, the ends of justice will be served by his release pending appeal.

In the alternative, Dr. Chun's significant medical issues require an extension of his surrender date. Dr. Chun's medical issues necessitate a vascular surgical procedure and recovery that could not be completed prior to the currently scheduled February 1, 2023, self-surrender date.

WHEREFORE, Defendant/Appellant Steven Chun respectfully requests that this Honorable Court grant this Motion for Release Pending Appeal and order reasonable conditions of his release pending the final resolution of the appeal. In the alternative, Dr. Chun would request the Court to grant his unopposed request to extend his self-surrender date for a period of approximately 60 days to allow him to undergo and recover from the vascular procedure discussed above.

          Respectfully submitted,

          s/ *J. Jervis Wise*
          J. JERVIS WISE, ESQ.
          BRUNVAND WISE, P.A.
          615 Turner Street
          Clearwater, FL 33756
          Telephone:  727-446-7505
          Facsimile:  727-446-8147
          E-Mail: jervis@acquitter.com
          Florida Bar # 0019181
          Counsel for Defendant

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on January 17, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                            s/ *J. Jervis Wise*
                                            J. JERVIS WISE, ESQ.
                                            BRUNVAND WISE, P.A.
                                            615 Turner Street
                                            Clearwater, FL 33756
                                            Telephone:  727-446-7505
                                            Facsimile:  727-446-8147
                                            E-Mail: jervis@acquitter.com
                                            Florida Bar # 0019181
                                            Counsel for Defendant