UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

     v.                        CASE NO. 8:20-cr-120-WFJ-JSS

STEVEN CHUN

## UNITED STATES' RESPONSE IN OPPOSITION TO
## MOTION FOR RELEASE PENDING APPEAL

The United States respectfully opposes Defendant's Chun's Motion for Release Pending Appeal (Doc. 332).[1] The Motion identifies three appellate issues, all of which were already rejected by this Court and are without merit. The Court should deny the motion because the defendant has not satisfied the relevant requirements of 18 U.S.C. § 3143(b).

### FACTUAL SUMMARY

On May 24, 2022, a jury found Dr. Steven Chun of one count of guilty of Conspiracy to Defraud the United States and to Violate the Anti-Kickback Statute and five substantive counts of the Anti-Kickback Statute. Dkt. 215. On December 5, 2022, this Court sentenced Defendant Chun to 42 months in prison and was ordered

---

[1] The United States notes that the Motion was filed on January 17, 2023, two weeks before Defendant Chun was due to report to the Bureau of Prisons on February 1, 2023 – a date which was extended by the Court at sentencing, after numerous delays in the Defendant's sentencing hearing dates. In the Motion, Defendant sought additional time for another medical procedure, which the government did not oppose. With generous delays already granted to defendant Chun, the United States opposes any further delay pending appeal.

to self-surrender. Dkt. 299. Defendant Chun filed a Notice of Appeal on December 16, 2023. Dkt. 311.

On January 17, 2023, Defendant Chun filed a motion for release pending appeal, or alternatively, to extend his reporting date by 60 days for a medical procedure. Dkt. 332. On January 19, 2023, the Court granted the motion to extend Defendant Chun's reporting date for 60 days (Dkt. 334) and thereafter directed the United States to file its response to the motion for release pending appeal. Dkt. 333.

## STANDARD FOR RELEASE PENDING APPEAL

The Bail Reform Act of 1984 imposes stringent restrictions on the availability of bail pending appeal, *see* 18 U.S.C. §§ 3143, 3145, and § 3143(b), and presumes that a defendant (like Defendant Chun), who has been convicted and sentenced to a term of imprisonment, should be detained without bond. *See United States v. Giancola*, 754 F.2d 898, 900 (11th Cir. 1985) ("Specifically, Congress intended to reverse the presumption in favor of bail that existed under the prior state, the Bail Reform Act of 1966."). It is also presumed that a defendant's conviction is valid and that he should be incarcerated. *Id.* at 900-901. The defendant bears the burden to overcome these presumptions. *Id.* Specifically, the Bail Reform Act requires that a convicted criminal who has been sentenced to imprisonment be detained pending appeal unless he establishes:

(1)    by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person or the community if released;

(2)    that his appeal is not for the purpose of delay;

2

(3)     that his appeal raises a substantial question of law or fact; *and*

(4)     that resolution of that question favorably to the appellant is likely to result in

     (i)     reversal of all counts of conviction on which imprisonment has been imposed,

     (ii)    an order for new trial of all counts on which imprisonment has been imposed,

     (iii)   a sentence that does not include a term of imprisonment, or

     (iv)    a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b); *see United States v. Giancola*, 754 F.2d 898, 900–01 (11th Cir. 1985). In placing the burden on the appellant, Congress concluded that "[o]nce guilt of a crime has been established in a court of law, there is no reason to favor release pending imposition of sentence or appeal" and that "release of a criminal appellant into the community after conviction may undermine the deterrent effect of the criminal law." *See* S. Rep. No. 98–147 at 53 (1983).

## ARGUMENT

Chun is not entitled to release pending his appeal because he has not established that his appeal raises a "substantial question of law or fact," that the appeal is not for the purpose of delay, or that it is likely to result in reversal of his convictions. Failure to make any of these three showings is grounds for denial of the defendant's motion. *See Giancola*, 754 F.2d at 900-01.

## I.     There is No Substantial Question of Law or Fact

Chun has not established that his appeal will raise a substantial question of law or fact, as required by 18 U.S.C. § 3143(b)(1)(B). "[A] 'substantial question' is one of more substance than would be necessary to a finding that it was not frivolous. It is a 'close' question or one that very well could be decided the other way." *Giancola*, 754 F.2d at 901.

Chun's motion identified three appellate issues in his motion – all of which were already rejected by the Court, two in Defendant's motion for a new trial (Doc. 244) and one during the trial.[2]

In its order denying the Defendant's Motion for Acquittal or Alternatively New Trial, this Court rejected two of the same arguments that the Defendant makes here for release pending appeal. *See* Doc. 252 (noting that the government's response "aptly summarized" the reasons such arguments were rejected). Specifically, the Court rejected the Defendant's arguments that sufficiency of the evidence and admission of prejudicial Cephalon evidence warranted reversal or a new trial. As to sufficiency of the evidence, the Government listed pages of evidence sufficient for

---

[2] In his motion, Chun attempts to argue two other "potential issues to be raised on appeal;" yet Chun admits in the next sentence that those issues will not "likely meet the standard of a 'substantial question'" under § 3143(b). Dkt. 332 at 15-16. The Court should disregard these issues by Defendant's own admission. Moreover, the medical necessity issue was argued extensively in pretrial motions and during trial. Similarly, the calculation of the value of the improper benefit conferred was extensively briefed and argued at defendant's sentencing hearing and significantly the Court held that it would have sentenced Defendant Chun to the same term of imprisonment if it had calculated the benefit as the Defendant suggested. *See* Dkt. 330 at 66-67. Significantly, neither of these issues present a substantial issue of law or fact which presents a "close" question or one that could be decided the other way.

Chun's conviction in its response to the Defendant's motion, Doc. 250 at 4-12, which
argument it incorporates herein. The Government also incorporates it response to the
Cephalon evidence where the government identified the Court's rulings and the
permitted Cephalon evidence in detail in its response. *Id*. at 15-17. The final
argument, the Court's response to one of the jury's questions, also lacks merit.

*Sufficiency of Evidence*

Sufficiency of evidence rarely presents a "substantial question" of law and
fact, or one that is a "close call" or "one that very well could be decided either way"
under the standard set forth in *United States v. Giancola*, 754 F.2d 898 (11th Cir.
1985). *See United States v. Fernandez*, 1988 WL 34941, *2 (S.D. Fla. 1988), *aff'd* 905
F.2d 350 (11th Cir. 1990) ("Ordinarily, the sufficiency of the evidence as
distinguished from a total lack of evidence does not in itself establish
a substantial question: if that were the standard, every case raising this common
ground would entitle the defendant to bond pending appeal."). In reviewing Chun's
sufficiency claim, the evidence must be viewed in the light most favorable to the
government and all reasonable inferences and credibility choices drawn in the
government's favor -- "[t]he question is whether reasonable minds *could* have found
guilt beyond a reasonable doubt, not whether reasonable minds *must* have found guilt
beyond a reasonable doubt." *United States v. Bacon*, 598 F.3d 772, 775 (11th Cir.
2010).

As the Court found in denying Chun's motion for acquittal or new trial (Dkt.
Dkt. 252), Chun's conviction was supported by both direct and circumstantial

evidence, including former Insys Vice President of Sales Alec Burlakoff's testimony that he directly presented the bribe in the form of speaker fees paid to Chun in return for writing Subsys prescriptions. Dkt. 235 at 262–63 (Burlakoff testified that he spoke to Chun about using him as a speaker and in return Burlakoff "needed [Chun] to write Subsys and write a lot of it." When asked if Chun agreed, Burlakoff answered "Verbally he agreed, yes."). Burlakoff and former Insys CEO Michael Babich testified about the overall bribe-to-prescribe plan and about the return-on-investment analysis, the "ROI," of at least 2:1 for Insys speakers, including Defendant, which required that an Insys speaker's paid Subsys prescriptions equaled at least two times more than their purported speaker fees and that certain doctors who did not make the required ROI were not allowed to continue as paid speakers. Dkt. 236 at 29–31 (Burlakoff explaining the ROI analysis and the term "soft delete" used for Insys speakers not satisfying the ROI); Dkt. 234 at 152–55, 167–69 (Babich testimony regarding Insys ROI). Witness testimony and the Insys reports established that Chun exceeded this ROI. Dkt. 234 at 175–77 (Babich testified that Exhibit 700 showed weekly and monthly increases in Chun's Subsys prescriptions, from which Insys calculated a high ROI for Chun); Dkt. 236 at 99–100 (Burlakoff testified that Chun's numbers satisfied Insys's ROI and Chun was always in top 10 or 15 prescribing doctors).

The evidence at trial also showed that Defendant understood the terms of the bribe to prescribe and the kickback conspiracy. Tondre communicated Defendant Chun's knowledge to his supervisors, s*ee, e.g.*, Exhibit 213E (Tondre text message to

his supervisors that Chun "knows numbers are low he is working it"), and also

forwarded text messages from Chun to them establishing that Chun knew he needed

to prescribe Subsys to more patients. *See* Exhibits 213B, 213D (Tondre-forwarded

text messages from Chun, "looking for sub pts" and "8 rx today already"). In at least

one email, Chun himself acknowledged the bribe to prescribe more Subsys. *See*

Exhibit 293 (Chun responds, "Feels likes another hugh (sic) day for Subs (sic)" to an

email regarding airline tickets, hotel, and car rental reservations purchased by Insys

for Chun (and for his then-girlfriend) to fly from Tampa to Phoenix to meet with

Insys's chairman)*;* Dkt. 234 at 178–78 (Babich testimony regarding Exhibit 293).

There was considerable evidence from which the jury could infer that Defendant

knew the essential nature of the conspiracy and willfully joined in:

- There was ample evidence that Chun's events had few attendees and repeat

  attendees; i.e., Pharmacist Doshi—56 times, and fellow Insys speaker Miguel

  De La Garza—31 times. *See* Dkt. 239 at 215 (Ford testimony summarizing

  speaker sign-in sheets); Exhibit 718 (Ford summary chart of Chun speaker

  event repeat attendees).

- Often, Chun's family attended the events. *See* Dkt. 237 at 292–93 (Rosado

  testified that Chun's family attended his speaker events, which was against

  Insys's rules, and he helped created fabricated sign-in sheets for them); Exhibit

  50H2 (text from Chun to Tondre: "Thank you for a wonderful evening. My

  family enjoyed it very much.").

- The speaker events generally included little discussion of Subsys. *See* Dkt. 237 at 31 (Dr. Myrdalis Diaz Ramirez testified that at one Chun speaker event, "I remember him saying, 'hey, use Subsys, it's good' and that was it."); Dkt. 234 at 33–34 (Dr. Steven Mamus testimony that there was no educational component at Chun events).

- There were forged sign-in sheets from witnesses who did not attend. *See, e.g.*, Dkt. 237 at 290–91 (former Insys ABL Andre Rosado testified regarding cut and pasting of sign-in sheets with Tondre). Numerous witnesses testified that their signatures were forged or copied on sign-in sheets *See, e.g., id*. at 34–36 (Dr. Shaukat Chowdari: "Q: does that appear to be your authentic signature? A: No."); Dkt. 235 at 20 (Mandi Nehring testified "That's the same as the other signatures."); Dkt. 235 at 19–21 (Dr. Rudolfo Panganiban testified that his signature was forged on five sign-in sheets).

- Babich testified that Insys hired Chun's then-girlfriend, Aqsa Nawaz, to influence and increase Chun's Subsys prescription writing. *See* Dkt. 234 at 183–84 ("We did it in the hopes that if we hire [Nawaz] that [Chun] would continue to write Subsys prescriptions and hopefully write more."); Dkt. 236 at 77 ("Chun wanted [Nawaz] hired and Dr. Chun is the Six Million Dollar Man, so again, you don't say no to the Six Million Dollar Man.").

- Nawaz bragged about converting all of Chun's fentanyl prescriptions from Actiq and Fentora to Subsys. *See* Exhibit 331 ("I am pleased to announce that

we have successfully converted all of Dr. Chun's patients that were on actiq 1200 and 1600 mcg.").

- Dr. Michael Frey, another Insys speaker, testified that he had a conversation with Dr. Chun about being a speaker for Subsys in which Dr. Chun "bragged that he was the highest paid speaker in the country for his prescription writing." Dkt. 238 at 255.

Finally, the Medicare data presented at trial established that Chun's Subsys prescriptions in fact increased with the speaker fees paid—that is, the bribe to prescribe worked. *See* Dkt. 239 at 197 (admitting Exhibit 722 which showed as Chun's speaker fees increased so too did Chun's Subsys prescriptions).

As such, the sufficiency of the evidence does not raise a substantial question of law or fact; that is, it is not a "close" question or "one that very well could be decided the other way."

*Chun's Objection to Answer to Jury Question*

The Defendant argues that the Court's answer to the jury's question regarding exhibits prejudices him. Again, this issue is not one that raises a substantial issue of fact that warrants release pending appeal of this issue because the Court's response to the jury's question did not improperly comment on the evidence. Thus, the Court Court committed no error and even if there were error, it would be harmless.

In *Quercia v. United States*, 289 U.S. 466 (1933), the Supreme Court stated that a trial judge is not limited to giving abstract instructions, instead he may "assist the jury in arriving at a just conclusion by explaining and commenting upon the

evidence, by drawing their attention to the parts of it which he thinks important; and he may express his opinion upon the facts, provided he makes it clear to the jury that all matters of fact are submitted to their determination." *Id.* at 469. The Eleventh Circuit has held that a trial judge may comment on evidence "so long as he instructs the jury that it is the sole judge of the facts and that it is not bound by his comments," provided they are not "highly prejudicial." *United States v. Hope*, 714 F.2d 1084, 1088 (11th Cir. 1983) (trial judge, after conferring with counsel, responded to a jury note by instructing that the jurors' own recollections "governed its findings" and not the Judge's recollections, some of which he then shared with the jury). Of course such discretion is not without limits; the judge may not "either distort or add to" the evidence, and should make commentary only with great care. *Quercia*, 289 U.S. at 469. Here, the Court did neither, and his answer to the jury's question did not include any improper commentary.

At trial, the Court heard the arguments of counsel and the suggestions of the parties as to the proposed answer to the jury's question, Dkt. 242 at 3-12, as it had on other jury questions. As noted by the Court, the parties disagreed about what the jury was asking. "Looking at these, I can't tell if they're forwarded [texts] or not, okay? The Government suggested they were. You're saying they're not. That's a factual matter. Is this a zebra or is this a burro? I don't know, okay? You're saying it's not, the Government has suggested it was, you didn't object, it's not real clear from the evidence. So here is what I'm going to say: Per your note, colon, you may be referring to Exhibits 212-B comma 213-B comma and 213-D, question mark,

question mark. Okay? Please consider all the evidence as a whole, period." *Id.* at 11. The Court correctly and clearly stated on the record, twice, in formulating the response that was ultimately provided to the jury, that the Court was not going to impermissibly comment on the evidence. "I'm not going to comment on the evidence to them [the jury], okay? I'm not going to say this is a forwarded message, this is a zebra, this is a donkey, okay?" *Id.* at 8. And again, the Court noted, "I'm not commenting on the evidence." *Id.* at 10.

As such, the record contradicts Defendant Chun's assertion that Court's response to the jury's question was "tantamount to a comment on the evidence." Dkt. 332 at 13. Accordingly, under both *Quercia* and *Hope*, the Court properly acted within its discretion in answering the Court's question and properly reminded the jury to "consider all the evidence as a whole." Dkt. 217 at 6.

In another Eleventh Circuit case where the Court commented, rather extensively, on the evidence at the close of the case but prior to instructing the jury (not in response to a jury question), the Court held that the trial judge's comments did not "stray from neutrality" and did not abuse his discretion. *United States v. Jenkins*, 901 F.2d 1075, 1083 (11th Cir. 1990) (trial judge's commentary concluded by telling the jury that it was their "consideration on matters of fact" that determine guilt or innocence beyond a reasonable doubt). Here, the Court responded to the jury's question *after* it received instruction from the Court—instructions that included that their decision "must be based only on the evidence presented" at trial; that they consider "only the evidence … admitted in the case" through exhibits and

witnesses;" that "anything the lawyers say is not evidence;" and finally that they "shouldn't assume from anything [the judge] said that [the judge has] any opinion about any factual issue in this case..." Dkt. 214 at 2, 4, 5. And jurors are presumed to have followed the Court's instructions in reaching a verdict. *Adams v. Wainwright*, 709 F.2d 1443, 1447 (11th Cir. 1983).

For Defendant's jury question argument to raise a "substantial question," Defendant would have to show that the Court abused its discretion. Defendant cannot make that showing and even if Defendant could, such an error would be harmless because Defendant cannot show, as required under § 3143(b) that such an error would require reversal or an order for new trial for all counts on which imprisonment has been imposed. Thus, under current caselaw, it does not appear to present a "close call" and does not present a substantial question of law that warrants the relief requested by Defendant Chun.

*The Cephalon Evidence*

Chun argues, as he did in his motion for new trial, that the admission of evidence related to Cephalon, which he inaccurately characterizes as "concerning an unrelated scheme" and "in violation of the court's Rulings," presents a substantial question. Dkt. 332 at 14. It does not. Neither was the case as demonstrated by the court's rejection of this argument for new trial. Nor is it a "novel and unique" or "fact-intensive" issue. As such, it also fails to present a "substantial question of law and fact" that warrants Chun's release pending appeal.

Again, the facts relating to this issue were born out in the government's response. Doc. 250 at 15-17.   At the outset, the Court sustained Defendant's objections to this testimony and made its own objection to counsel's questioning about Cephalon during the direct examination of Burlakoff. *See* Dkt. 235 at 255 (Court: "We can skip over any more Cephalon stuff."). The Court also struck Burlakoff's testimony in direct examination regarding speaker events at Cephalon and directed the jury to disregard his response. *See* Dkt. 244 at 18–19 (quoting Dkt. 236 at 210–11).

Instead the evidence at trial established that the hiring of Dan Tondre, who had experience with Chun at Cephalon, to replace Tracy Krane was another inducement Chun to prescribe more Subsys. Dkt. 236 at 37. Tondre and his supervisors came to Insys as a result of their experience at Cephalon. Dkt. 235 at 255. That background is relevant and did not prejudice the jury, either through trial testimony or at closing.

Also, Cephalon (and its competitor TIRF drugs) were part of the admitted documents, *see, e.g.*, Exhibit 314 (email from Aqsa Nawaz, referring to Chun: "He wants to help. He's helped actiq, fentora, now it's time for Subsys to take the spotlight."), as well as part of the narrative, as Krane testified about how things changed at the company when her new boss (Burlakoff) was hired, and that Burlakoff hired others with whom he had previously worked at Cephalon.

As such, Defendant's argument that the Court admitted prejudicial Cephalon evidence does not raise a substantial question of law or fact.

## II.      Chun Cannot Establish His Appeal is Not for the Purpose of Delay

The Defendant has failed to establish that his appeal is not for the purpose of

delay, as required by 18 U.S.C. § 3143(b)(1)(B). *See Giancola*, 754 F.2d at 900–01.

"As for whether delay is the purpose of an appeal, courts often make such

determinations [with respect to delay] based on the facts and procedural history of

the case, and tie this determination to whether the appeal raises a substantial

question of law." *United States v. Silver*, 2018 WL 4440496, at *2 (S.D.N.Y. Sept. 17,

2018) (collecting cases). Defendant's Motion does not address the issue of delay,

aside from its setting forth the standard under § 3143(b) and the purported merits of

the appellate issue. Dkt. 96.

The appeal does not raise a substantial question of law or fact, as discussed

above, and the facts and procedural history of this case provide some indication that

it is being sought to delay the defendant's reporting to prison to serve his sentence.

The Court repeatedly delayed and granted defendant's requests to continue his

sentencing, Dkts. 227, 254, 258-59, 268-70, 280, and allowed the defendant two

more months beyond the original surrender date pronounced at sentencing to report

to the Bureau of Prisons. Dkt. 334.

In light of the foregoing and under the requirements of § 3143(b), the United

States submits that the defendant has not carried his burden of establishing that the

appeal is not being taken for the purposes of delay.

III.   **Defendant Cannot Show that His Appeal is Likely to Result in the Requested Relief**

Finally, the defendant has not carried his burden of establishing that any substantial question is likely to result in his obtaining relief that would call for his release pending appeal, as required by 18 U.S.C. § 3143(b)(1)(B)(i)-(iv). That is, he has not shown a likelihood that he will obtain reversal of his conviction, an order for new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the total of the time already served (none) plus the expected duration of the appeal process.

## CONCLUSION

Because Defendant Chun has failed to establish the requisite elements under §3143(b)(1), this Court should deny his motion for release pending appeal.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By:    */s/ Kelley C. Howard-Allen*
Kelley C. Howard-Allen
Assistant United States Attorney
Florida Bar No.: 0085464
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6103
E-mail: Kelley.Howard@usdoj.gov

**U.S. v. Chun**                                    **Case No. 8:20-cr-120-WFJ-JSS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 17, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to defense counsel.

*/s/ Kelley C. Howard-Allen*
Kelley C. Howard-Allen
Assistant United States Attorney
Florida Bar No.: 08564
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6103
E-mail: Kelley.Howard@usdoj.gov
